**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION**

**WOODCRAFT MANUFACTURING, INC.,**

    **Plaintiff**

v.                                     **CASE NO. 3:08cv455/MCR/EMT**

**THE CHARTER OAK FIRE
INSURANCE COMPANY,**

    **Defendant**
_____/

## O R D E R

In this suit Plaintiff Woodcraft Manufacturing, Inc. ("Woodcraft" or "plaintiff") claims that Defendant Charter Oak Fire Insurance Company ("Charter Oak" or "defendant") breached a contractual duty to defend and indemnify Woodcraft in connection with a 2005 case filed against Woodcraft in this court by Caddell Construction Company, Inc. ("Caddell").[1] In that case, Caddell sued Woodcraft to recover damages Caddell was required to pay to one of Woodcraft's employees based on Woodcraft's failure to maintain workers' compensation insurance coverage while performing work as a subcontractor for Caddell. Woodcraft has filed this suit against Charter Oak to recoup the money and attorney's fees it spent to settle Caddell's claims in the earlier suit, which Woodcraft alleges should have been covered under a general commercial liability policy Woodcraft had with Charter Oak.

Charter Oak has filed a motion to dismiss under Fed.R.Civ.P. 12(b)(6). Both parties have relied on materials outside the pleadings and have explicitly drafted their motion and response in anticipation that the court would consider the issues in this case under the

---

[1] *Caddell Construction Co., Inc. v. Woodcraft Manufacturing, Inc. and McMahon-Hadder Insurance, Inc.*, Case No.3:05cv296/RV/EMT (N.D. Fla. filed Aug.1, 2005).

summary judgment standard of Fed.R.Civ.P. 56. Based on the parties' filings, the court considers Charter Oak's motion to dismiss as one for summary judgment and grants it for the reasons set forth below.

**Background**

Caddell was the general contractor for a new federal courthouse project in Greenville, Tennessee. In July 1999, it subcontracted the architectural woodworking portion of the project to Woodcraft.[2] The subcontract between Woodcraft and Caddell required Woodcraft to obtain both public liability insurance and workers' compensation insurance for its work on the Tennessee project. Woodcraft complied with the first part of this obligation in June 2001 by obtaining a general commercial liability policy from Charter Oak.[3] In an amended endorsement under that policy, Charter Oak promised to "pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' . . . to which this insurance applies. We will have the right and duty to defend the insured against any 'suit' seeking those damages." The Charter Oak policy specifically excluded coverage for workers' compensation claims. Accordingly, Woodcraft bought a second insurance policy from Bridgefield Insurance Company ("Bridgefield")[4] in the belief the new policy would provide the workers' compensation coverage required under its subcontract with Caddell.

On August 10, 2001, Gary Slone, a Woodcraft employee working on the courthouse project, suffered a stroke on the job. He eventually brought suit against Woodcraft in Tennessee state court, alleging that his employer owed him workers' compensation benefits under Tennessee law.[5] Woodcraft made a demand for coverage under its

---

[2] Woodcraft is a Florida corporation whose principal place of business is in Gulf Breeze, Florida; Charter Oak is a Connecticut company; and the amount in controversy exceeds $75,000. The court therefore has diversity jurisdiction over this matter pursuant to 28 U.S.C. § 1332.

[3] Policy no. I0660-178C2561 was issued on June 12, 2001 and covered the period from 6/1/01 to 6/1/02.

[4] Policy No. 178C2561.

[5] The case was filed on Nov. 14, 2001 in the Third District Court for Greene, County Tennessee. Case No. 01-cv-869.

Case No.: 3:08cr455/MCR/EMT

workers' compensation policy with Bridgefield. Bridgefield denied coverage, claiming Woodcraft's policy only covered workers' compensation claims for employees injured in Florida.[6] A Tennessee state court found that Slone had suffered a 100% work-related disability and entered judgment against Woodcraft and Caddell.[7]

In 2005, Caddell sued Woodcraft and McMahon-Hadder Insurance, Woodcraft's insurance agent, in this court to recover the damages it was liable for under the Tennessee judgment. In that case, Caddell raised five claims against Woodcraft:

> 1. <u>Breach of contract</u>: Caddell requested damages for the economic harms it suffered because Woodcraft failed to obtain all the insurance required by the subcontract.
>
> 2. <u>Contractual indemnification</u>: Caddell invoked an indemnification clause in its subcontract with Woodcraft to recoup all money it was required to pay Slone, claiming that Woodcraft's negligence made Caddell vicariously liable.
>
> 3. <u>Common law indemnification</u>: Caddell sought common law indemnification for its losses, claiming that it was only secondarily liable for Slone's damages.
>
> 4. <u>Contribution</u>: Caddell sought contribution for the damages owed to Slone on the theory that Caddell and Woodcraft were jointly and severally liable.

---

[6] Mary Eders, Woodcraft's corporate secretary, states that Woodcraft submitted the workers' compensation claim to Bridgefield and that it was denied. Affidavit of Mary Eders at ¶¶ 10-11. The record does not contain the dates of Woodcraft's demand, Bridgefield's denial, or any written communication between Woodcraft and Bridgefield concerning Woodcraft's claim.

[7] The state trial court found that Slone was entitled to $181,272 in disability benefits; $156,795.65 to pay off a lien asserted against him by the Department of Veterans Affairs (where Slone was treated for three months); $994.95 in litigation costs; plus unspecified future medical expenses. Motion to dismiss at ¶¶ 18-19. This court assumes Woodcraft and Caddell were held jointly and severally liable for these amounts, but the record is unclear on this point. Slone initially sued only Woodcraft, and neither Woodcraft nor Charter Oak has submitted the trial court's final judgment or the amended complaint adding Caddell as a defendant to Slone's suit. The ruling on appeal indicates that both Caddell and Woodcraft were found liable by the trial court, but there is no indication of whether liability was joint and several; presumably it was, however. *See Slone v. Woodcraft Mfg., Inc.*, No. E2005-01575-WC-R3-CV, 2006 WL 2006 (Tenn. Workers Comp. Panel Oct. 30, 2006). Caddell's liability would have been premised on Tenn. Code Ann. § 50-5-113, which allows an injured employee to recover workers' compensation benefits from a general contractor as the workers' "statutory employer." Caddell claimed in the 2005 suit in this court that either it or its insurer, St. Paul-Travelers Insurance, had to satisfy the state court judgment because Woodcraft did not have the workers' compensation coverage required by the subcontract. This court record does not show when, or if, Caddell or St. Paul-Travelers paid Slone the damages assessed by the trial court.

Case No.: 3:08cr455/MCR/EMT

      5. <u>Piercing the corporate veil</u>: Caddell claimed that Woodcraft was merely an alter ego of its principals, Mary and Frederick Eders, and sought to pierce the corporate veil to recover any assets the Eders might have diverted away from the company to avoid judgment.

Based on Caddell's complaint, Woodcraft made a demand to Charter Oak for defense and indemnification under the provisions of the commercial liability policy Woodcraft had purchased from Charter Oak in June 2001. Charter Oak denied coverage on the ground that Caddell's suit only raised economic claims against Woodcraft, not claims of bodily injury, which would have been covered by the policy. Woodcraft eventually paid Caddell $50,000 to settle all claims and incurred an additional $43,766.57 in attorney's fees.[8] On October 6, 2008, Woodcraft filed this suit against Charter Oak, alleging that Charter Oak breached its contractual duties (1) to defend Woodcraft in Caddell's lawsuit, thereby costing Woodcraft $43,466.57 in attorney's fees, and (2) to indemnify Woodcraft for the $50,000 it paid to settle Caddell's claims.

## Standard of Review

A motion to dismiss under Fed.R.Civ.P. 12(b)(6) that relies on matters outside the pleadings must be treated as one for summary judgment. Fed.R.Civ.P. 12(d). Ordinarily, the parties are entitled to ten days notice of the court's intention to convert a Rule 12 motion to dismiss into a motion for summary judgment under Rule 56. However, when a party relies on an affidavit as part of its response, and where the parties have clearly anticipated that the motion will be considered under the summary judgment standard, a court is not required to give notice of the conversion. *Stewart v. Booker T. Washington Ins.*, 232 F.3d 844, 853 (11th Cir. 2000).

A motion for summary judgment should be granted when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). A factual dispute is "genuine" if the evidence is such that a

---

[8] The case was dismissed on April 10, 2007.

Case No.: 3:08cr455/MCR/EMT

reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). A fact is "material" if it could affect the outcome of a suit under the governing law. *Id*. The court must view the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in its favor. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). "If reasonable minds could differ on the inferences arising from undisputed facts, then a court should deny summary judgment." *Miranda v. B & B Cash Grocery Store, Inc.*, 975 F.2d 1518, 1534 (11th Cir. 1992) (citation omitted).

The moving party has the initial burden of showing the absence of a genuine issue as to any material fact. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993). Once the movant satisfies its burden of showing the absence of a genuine issue of material fact, the burden shifts to the nonmovant to produce specific facts showing there is a genuine issue for trial. *Matsushita Elec. Indus. Co.*, 475 U.S. at 587 (emphasis omitted). A general denial unaccompanied by any evidentiary support is not sufficient. Fed.R.Civ.P. 56(e)(2). Instead, the nonmoving party must "demonstrate that there is indeed a material issue of fact that precludes summary judgment." *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991).

**Discussion**

Because Woodcraft's defense and indemnification claims are so intertwined in this case, the court considers them together. So doing, however, the court notes that an insurance company's duty to defend an insured is broader than its obligation to indemnify. *Lime Tree Village Cmty. Club Ass'n, Inc. v. State Farm Gen. Ins. Co.*, 980 F.2d 1402, 1405 (11th Cir. 1993); *Smith v. General Acc. Ins. of America*, 641 So.2d 123, 124 (Fla. 4th DCA 1994). Whereas the duty to defend depends solely on the allegations in the complaint such that any alleged fact that brings an injury within the policy's coverage triggers the duty to defend an insured regardless of the merits of the lawsuit, *Smith*, 641 So.2d at 124, an

insurer's duty to indemnify depends on the underlying facts of a case. *Hagen v. Aetna Cas. and Sur. Co.*, 675 So.2d 963, 965 (Fla. 5th DCA 1996).

Charter Oak maintains it had no duty to defend Woodcraft against Caddell's claims or indemnify Woodcraft for the money it paid to settle Caddell's suit because its liability policy with Woodcraft only obligated it to defend Woodcraft against allegations of bodily injuries, and Caddell's lawsuit sought economic, not bodily, damages. Woodcraft argues in response that Caddell's complaint did, in fact, seek damages for bodily injuries by demanding "any and all damages which are assessed against Caddell for Mr. Slone's alleged injuries arising from August 2001." (Caddell Amended Complaint ¶ 36). The court disagrees. None of Caddell's claims against Woodcraft in the earlier suit were based on bodily injury. Although Slone's physical injury formed the background for Caddell's lawsuit, Caddell did not sue Woodcraft because Slone was injured and did not seek damages for Slone's injury. Instead, Caddell sued Woodcraft because it was forced to pay the workers' compensation benefits Woodcraft as the subcontractor had been contractually obligated to cover with insurance but failed to obtain. Caddell's specific claims were nothing more than different theories for recovering the money the Tennessee court ordered it and Woodcraft to pay to Slone. Economic loss, not physical injury, was the gravamen of each of the claims.

This case is, for all practical purposes, identical to *American States Ins. Co. v. Pioneer Electric Co., et al.*, 85 F.Supp.2d 1337 (S.D. Fla. 2000), where an insurance company obtained a declaratory judgment relieving it of the duty to defend and indemnify a subcontractor whose workers' compensation coverage had lapsed before one of its employees was injured in the scope of his employment. Similar to this case, the general contractor was held liable on the employee's workers' compensation claim, and the contractor subsequently sought reimbursement of its payments from the subcontractor. The court found that the claims were essentially economic in nature, did not fall within the policy's provisions for "bodily injury," and did not require the insurance company to defend or indemnify the subcontractor. *Id*. at 1343. Consistent with *American States*, this court finds that Caddell's earlier claims against Woodcraft were economic in nature, outside the

scope of the general liability policy, and thus Charter Oak was not obligated to defend or indemnify Woodcraft in the earlier litigation.[9]

Woodcraft also argues that Charter Oak was obligated to defend and indemnify it in Caddell's 2005 suit because none of the exclusions in the policy between Woodcraft and Charter Oak applied to Slone's injuries. As stated earlier, the policy required Charter Oak to pay for a "bodily injury" covered by the policy and to defend Woodcraft in any suit related to the injury. The policy, however, also contained several exclusions to coverage. The most important of these was the "employer's liability" exclusion of Section 1(A)(2)(e) of the policy, which provided that coverage did not apply to any bodily injury of a Woodcraft

---

[9] The court is not persuaded by Woodcraft's attempt to distinguish its situation from *American States* on public policy grounds. The subcontractor in *American States* intentionally violated its duty to maintain workers' compensation insurance by allowing the policy to lapse after being warned about failing to make timely premium payments. Woodcraft argues that because it actually attempted, albeit unsuccessfully, to obtain the proper insurance, *American States* does not apply. There is no suggestion in either *American States* or in any authority offered by Woodcraft that a subcontractor's good faith effort relieves it of its contractual obligation to provide proper workers' compensation or excuses its failure to do so; indeed, intent is irrelevant here. Woodcraft also argues that *American States* is contrary to *U.S. Fire Ins. Co. v. J.S.U.B.*, 979 So.2d 871 (Fla. 2007), which Woodcraft suggests eliminated the distinction between economic and "bodily injury" damages in *American States*. The court is again unpersuaded. In *J.S.U.B.,* a subcontractor's failure to use proper soil compaction caused damage to a home's foundation and drywall. The general contractor repaired the home's structural damage and sought coverage for the repair expenses under its general commercial liability policy, claiming that the structural damage caused by the subcontractor's work was "property damage" covered under the policy. The Florida Supreme Court agreed, holding that the expenses the general contractor incurred to repair the home's physical structure fell within the policy's "property damage" clause and were therefore covered. Woodcraft argues by analogy between "property damage" and "bodily injury" that, just as the general contractor's economic losses for repairing the home were recoverable as "property damage" in *J.S.U.B.*, Woodcraft's payments to Caddell to settle the 2005 lawsuit should likewise be considered economic losses covered under the "bodily injury" provision of the liability policy Woodcraft had with Charter Oak. The court disagrees. In *J.S.U.B.,* the court determined that allegations of physical injury to a completed project which stem from a subcontractor's faulty or defective work can constitute "property damage" under a general contractor's general commercial liability policy. *Id*. at 890-91. At the same time, however, the court also recognized that allegations of faulty workmanship alone, i.e. without physical injury to the property, would not qualify for coverage. *Id*. Although an important decision in Florida insurance law, *J.S.U.B.* has no application to the facts of this case and no bearing on the decision in *American States*. Indeed, Woodcraft's analogy is misplaced. In *J.S.U.B.*, the general contractor's claim was based on the home's structural damage, which allegedly stemmed directly from the subcontractor's faulty performance; in this case, however, as noted, Caddell's claim against Woodcraft was based on Woodcraft's failure to maintain worker's compensation insurance, which apparently was the result of a mistake on Woodcraft's part. Whereas the claim in *J.S.U.B.* was directly related to the subcontractor's faulty work, in that the faulty work resulted in physical injury to the property, Caddell's claim against Woodcraft was merely incidentally related to Slone's bodily injury. Moreover, as stressed by the court in *J.S.U.B.*, every commercial general liability policy must be construed with the policy's specific exclusions in mind. *Id*. at 877. As noted, Woodcraft's policy with Charter Oak specifically excluded worker's compensation claims like Slone's.

Case No.: 3:08cr455/MCR/EMT

employee injured in the scope of his job duties. Although this exclusion would ordinarily apply to Slone, who was injured on the job while performing his duties, Woodcraft argues that a crucial saving clause brought Slone's injury back within the policy's coverage. According to the saving clause, the "employer's liability" exclusion "does not apply to liability assumed by [Woodcraft] under an 'insured contract.'" An "insured contract" is defined under Section V(8)(f) of the policy as any agreement relating to Woodcraft's business "under which you assume the tort liability of another party to pay for 'bodily injury' . . . to a third person or organization."

Woodcraft argues that its subcontract with Caddell was an "insured contract" based on Article XII(a) of the subcontract, under which Woodcraft agreed "to indemnify and hold harmless . . . [Caddell] . . . from and against all claims, damages, losses and expenses . . . arising out of or resulting from the performance of [Woodcraft's] work . . . provided that any such claim . . . is attributable to bodily injury." Woodcraft argues that under this provision it assumed Caddell's liability to pay for Slone's injury. According to Woodcraft, its agreement with Caddell constitutes an insured contract and, thus, is exempt from the "employer's liability" exclusion of the commercial liability policy between Woodcraft and Charter Oak. As a result, Woodcraft maintains Charter Oak was required to defend and indemnify it in Caddell's lawsuit.

The court rejects Woodcraft's tortured reading of both Section V(8)(f) of the liability policy and Article XII(a) of the subcontract. First, as noted above, Section V(8)(f) of the policy between Woodcraft and Charter Oak defined an "insured contract" as one in which Woodcraft agreed to "assume the *tort liability* of another party to pay for 'bodily injury'... to a third person . . . ." (emphasis added).[10] Workers' compensation payments, however, lie

---

[10] The insurance policy between Woodcraft and Charter Oak must be construed under Florida law. *Boardman Petroleum, Inc. v. Federated Mut. Ins. Co.*, 135 F.3d 750, 752 (11th Cir. 1998) ("Federal courts sitting in diversity apply the forum state's choice-of-rules."). Under Florida law, the law of the jurisdiction where the contract was executed governs the rights and liabilities of the parties. *State Farm Mut. Auto. Ins. Co. v. Roach*, 945 So.2d 1160,1163 (Fla. 2006). As in most states, the workers' compensation system in Florida provides the exclusive remedy for injuries arising out of an employee's scope of employment. Fla. Stat. §440.015 (1997). Although there is an exception for intentional acts against employees not applicable in this case, the trade off built into the workers' compensation scheme is that it shields participating employers from tort suits by employees injured in the scope of their employment. *Turner v. PCR*, 754 So.2d 683,686 (Fla.

outside the tort system as a matter of law.[11] *Turner*, 754 So.2d at 686. When Woodcraft and Charter Oak agreed in Section V(8)(f) of the commercial liability policy that Woodcraft's assumption of "tort liabilities" in another contract would be exempted from the "employer's liability" exclusion, they could not have been agreeing to include Woodcraft's obligation to indemnify a third party for payment of workers' compensation benefits to one of Woodcraft's employees because such benefits are not the result of tort liabilities. Moreover, accepting Woodcraft's argument, the employer's liability exclusion would essentially be read out of the liability policy, and Charter Oak would be liable for all workers' compensation claims made by Woodcraft's employees despite the exclusion of such claims in Section I(A)(2)(d) of the liability policy. Insurance contracts should be read as a whole in an effort to give meaning to all provisions, including the policy's exclusions. *The Doctors Co. v. Health Management Assoc., Inc.*, 943 So.2d 807, 809 (Fla. 2d DCA 2006); *J.S.U.B.*, 979 So.2d at 877.[12]

### Conclusion

Charter Oak had no obligation to defend or indemnify Woodcraft in Caddell's 2005 suit, and Charter Oak's motion to dismiss is GRANTED. Accordingly, it hereby ORDERED:

1. Defendant Charter Oak's motion to dismiss and motion for summary judgment (doc. 7) and amended motion for summary judgment (doc. 8) are GRANTED;

---

2000); *see also FCCI Ins. Co. v. Home*, 890 So.2d 1141, 1143 (Fla. 5th DCA 2004).

[11] The laws of both Connecticut, where Charter Oak is located, and Tennessee, where Slone's injury occurred also preclude tort claims when workers' compensation laws apply. *See Dowling v. Slotnic*, 244 Conn. 781, 799 (1998) (holding that employers covered by the workers' compensation statute are immune from tort suits absent a showing of intent to harm); *Valencia v. Freeland and Lemm Const. Co.*, 108 S.W.2d 238, 242 (Tenn. 2003) (same).

[12] Several courts have recently construed virtually identical "insured contracts" with the same tort provisions and concluded that they do not provide exceptions to liability exclusions when the insured party is seeking payments that are in reality indemnifications for tort damages. *See*, *e.g.*, *Certain London Market Ins. Companies v. Penn. Mutual Casualty Ins. Co.*, 106 F. App'x 884, 886 (5th Cir. 2004); *see also American Employers' Ins. Co. v. DynMcDermott Petroleum Operations Co.*, No. 07-03524, 2009 WL 814124 (S.D. Tex. March 25, 2009) (finding that an identical insured contract prohibits recovery for workers' compensation benefits because such benefits are not based on tort claims); *QBE Ins. Corp. v. Industrial Corrosion Control, Inc.*, No. 1:07-cv-35, 2008 WL 1868431 (S.D. Miss. Apr. 24, 2008) (same); *Forest Oil Corp. v. Ace Indemnity Ins. Co.*, No. 04-0435, 2004 WL 2347561 (E.D. La. Oct. 15, 2004 (same).

Case No.: 3:08cr455/MCR/EMT

2.  The Clerk is directed to enter final judgment in favor of Defendant Charter Oak, with costs taxed against Plaintiff Woodcraft Manufacturing, Inc. and CLOSE the case.

**DONE AND ORDERED** on this 12th day of May, 2009.


    *s/ M. Casey Rodgers*
**M. CASEY RODGERS
UNITED STATES DISTRICT JUDGE**